IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **RESOURCE BANK,** | |
| Plaintiff, | |
| v. | Civil Action No. 2:07cv75 |
| **PROGRESSIVE CASUALTY INSURANCE COMPANY,** | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Resource Bank ("Resource" or the "Bank") is a defendant in two class action lawsuits that seek millions of dollars in damages for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Resource initially failed to obtain indemnity and a defense of the lawsuits from St. Paul Mercury Insurance Company ("St. Paul"), the carrier that underwrote its general liability policy (the "GL Policy"). Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir. 2005) (hereinafter "Resource I").  The Bank then filed this coverage action against defendant Progressive Casualty Insurance Company ("Progressive"), which had issued a $3 million Directors and Officers Liability Insurance Policy with an Entity Errors and Omissions Endorsement (the "D&O Policy"). Because the TCPA claims asserted in the class actions are expressly excluded from the D&O Policy, the court **GRANTS** partial

summary judgment in favor of Progressive.[1]

## I. Factual and Procedural History

Resource is a banking corporation organized and existing under the laws of the Commonwealth of Virginia. It is a wholly-owned subsidiary of Fulton Financial Corporation, which is headquartered in Lancaster, Pennsylvania.

In February 2002, Resource's mortgage unit began to advertise by transmitting hundreds of thousands of unsolicited faxes to individuals and businesses in twenty-two states. Approximately one month later, one of the recipients of Resource's faxes filed a class action lawsuit in Marion County, Indiana under the style Cohen & Malad, LLP v. Resource Bankshares Corporation, et al., Civil Action No. 49D070203PL000429 (Cir. Ct., Marion County., Ind., filed Mar. 8, 2002) (the "Indiana Class Action"). The lawsuit claimed that Resource's fax advertising program violated the TCPA, which prohibits the facsimile transmission of unsolicited advertising. 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action and authorizes the recovery of actual damages or $500 per impermissible fax, whichever is greater. Id. § 227(b)(3).

In March 2005, Resource was named as a defendant in another

---

[1] Progressive filed a Motion to Dismiss (Docket No. 5), but the Court has converted it to a Motion for Partial Summary Judgment as permitted by Fed. R. Civ. P. 12(b).

TCPA class action, this one filed in Missouri state court under the style J.C. Corporate Management, Incorporated v. Resource Bank, Case No. 05CC-001203 LEQ (Cir. Ct., St. Louis County., Mo., filed Mar. 17, 2005)(the "Missouri Class Action").  The claims asserted in the Missouri Class Action are virtually identical to those in the Indiana Class Action.  The two class actions are referred to collectively as the "TCPA Class Actions."

A.  The GL Policy

After being served with the Indiana Class Action, Resource tendered defense of the case to St. Paul.  That carrier had written the GL Policy, which covered Resource during the periods of time addressed in the lawsuit.

The GL Policy provided coverage for "Advertising Injury Liability," which it defined in pertinent part as "making known to any person or organization written or spoken material that violates a person's right to privacy."  Resource I, 407 F.3d at 634-35.  The GL Policy also covered "Property Damage."  That section of the policy stated:

> **Bodily injury and property damage liability**.  We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that: happens while the agreement is in effect; and is caused by an event.

"Property damage" was defined as:

> . physical damage to tangible property of others,

3

>     including all resulting loss of use of that property;
>     or
>     . loss of use of tangible property of others that isn't
>     physically damaged.

To trigger coverage under the Property Damage provision, the loss must have been the result of an "event," which the GL Policy defined, <u>inter alia</u>, as an "accident."  <u>Id.</u> at 634.

Based on the policy language quoted above, St. Paul refused to indemnify Resource for any damages that might be awarded in the TCPA Class Actions and declined even to defend the case. Resource thereafter filed a coverage action against St. Paul in the United States District Court for the Eastern District of Virginia under the style Resource Bankshares Corporation v. St. Paul Mercury Insurance Company, Civil Action No. 2:03cv764 (E.D. Va. filed Nov. 4, 2003) (the "First Coverage Action").

The First Coverage Action ultimately was decided by the United States Court of Appeals for the Fourth Circuit.  The Fourth Circuit affirmed the district court's ruling that the GL Policy did not cover "property damage" of the sort claimed in the TCPA Class Actions.  Resource I, 407 F.3d at 639.  The Fourth Circuit also held that the "right to privacy" language in the GL Policy did not cover violations of the TCPA.  <u>Id.</u> at 642. Distinguishing between a secrecy right to privacy (i.e., revealing confidential information to a third party) and a seclusional right to privacy (i.e., the right to be left alone),

the Fourth Circuit held that the GL Policy covered only the former.  Id. at 640.  The TCPA Class Actions, by contrast, asserted violations of the seclusional right to privacy.  Id. at 640-41.

B.  <u>The D&O Policy</u>

Resource also sought coverage for the Indiana Class Action under the D&O Policy issued by Progressive. In June 2002, Progressive agreed to pay all of the defense costs that Resource would incur in the future after exhausting a $25,000 deductible. However, Progressive agreed to make these payments under a reservation of rights.  In a "Preliminary Coverage Analysis" letter dated June 7, 2002, Progressive cited the D&O Policy's exclusions for fraud and civil penalties as possible grounds for denying coverage.  Progressive also asserted that any coverage under the policy was in "excess to other available insurance." Progressive did not identify Exclusion A (Bodily Injury and Property Damage) of the D&O Policy as an applicable provision.

Resource also tendered defense of the Missouri Class Action to Progressive.  In a Preliminary Coverage Analysis letter dated September 19, 2005, Progressive agreed to defend this action under a reservation of rights.  Once again, Progressive stated that it might refuse to indemnify Resource if the case involved fraud or civil penalties.  Progressive again failed to identify Exclusion A of the D&O Policy as a basis for denying coverage.

As promised in the two Preliminary Coverage Analysis letters, Progressive paid most of Resource's defense costs between 2002 and 2005.[2] However, the insurance company continued to reserve its rights. By letter dated January 9, 2006, Progressive cited Exclusion A for the first time as a potential ground for denying indemnity. Two months later, Progressive stopped reserving its rights and began asserting them. By letter dated March 29, 2006, Progressive formally denied coverage based on Exclusion A. That provision states:

> **A. Bodily Injury and Property Damage Exclusion**: The Insurer shall not be liable to make any payment for Loss in connection with any Claim for actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible property including loss of use thereof, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander . . . .

## II. <u>Legal Standards</u>

A. <u>Summary Judgment</u>

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[2] Resource claims that as of April 11, 2006, Progressive had not reimbursed it for $95,000 in attorney's fees.

is entitled to a judgment as a matter of law."[3] Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006), cert. denied, 127 S. Ct. 53 (2006); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex, 477 U.S. at 323.

The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)). Summary judgment is an appropriate disposition when the non-moving party fails to offer evidence on which a reasonable jury could find in its favor. Beall v. Abbott

---

[3] Because the principles of summary judgment are well-established, further elucidation of those principles need not be provided here. See Garrow v. Economos Props., Inc., 406 F. Supp. 2d 635, 638-39 (E.D. Va. 2005) (providing detailed description of summary judgment principles), aff'd, 2007 WL 2032005 (4th. Cir. 2007); Taylor v. Wal-Mart Stores, Inc., 376 F. Supp. 2d 653, 657-58 (E.D. Va. 2005) (same), aff'd, 158 F.App'x 446 (4th Cir. 2005); Puckett v. City of Portsmouth, 391 F. Supp. 2d 423, 430-31 (E.D. Va. 2005) (same).

Labs., 130 F.3d 614, 619 (4th Cir. 1997); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

B.  Applicable Law in Contract Interpretation

Virginia choice of law principles dictate that the jurisdiction where an insurance contract is written and delivered is the jurisdiction whose laws control that contract's interpretation. Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004). Virginia law governs the interpretation of the D&O Policy, because that contract was delivered to Resource at its home office in Virginia Beach.

### III.  Analysis

In this action, Resource challenges Progressive's denial of coverage based on Exclusion A of the D&O Policy. Resource asserts that the terms of Exclusion A do not unambiguously exclude the claims asserted in the TCPA Class Actions. Alternatively, Resource argues that Progressive waived its right to rely on Exclusion A by failing to cite that provision in its Preliminary Coverage Analysis letters of June 7, 2002 and September 19, 2005. Only the first issue (i.e., the scope and meaning of Exclusion A) is before the Court on Progressive's motion.

A.  Ambiguity Arising From the Heading of Exclusion A

Resource first argues that the heading of Exclusion A

("Bodily Injury and Property Damage Exclusion") is inconsistent with the language contained therein. Resource contends that the full range of injuries itemized in the body of Exclusion A are not fully captured by the heading, thereby causing confusion and ambiguity.

The argument that Exclusion A's heading creates an ambiguity is foreclosed by the language of the D&O Policy itself, which expressly provides that:

> [the] descriptions in the headings, sub-headings and Table of Contents of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

General Conditions § IX.K. Moreover, even in the absence of this provision, the heading affixed to an exclusion does not have to list every harm or injury that appears in the body of the text.

Generally speaking, exclusions must be "prominently placed and clearly phrased." Daniel Maldonado et. al., 2 Couch on Insurance § 22:33 (2007). However, ambiguity does not arise merely because an exclusion appears below an imperfectly descriptive heading. See Container Storage, Inc. v. Underwriters at Lloyd's of London, 2002 WL 31430548, at *8 (S.F. City & County Super. Ct. 2002) (giving effect to a coinsurance clause even though it appeared under the heading "Conditions," rather than "Exclusions" or "Limitations"). But see Md. Casualty Co. v. Turner, 403 F.Supp 907, 911-12 (W.D. Okla. 1975) (holding that an

exclusion was ambiguous and not conspicuous because it was included in the section headed "Persons Insured" rather than the section headed "Exclusions"). Likewise, an exclusion is not ambiguous or non-prominent if its heading "would alert the average insured that coverage was being limited" and put them on notice that the provision should be read. Morrison v. Am. Intern. Ins. Co. of Am., 887 A.2d 166, 173 (N.J. Super. Ct., App. Div. 2005).

Here, the heading makes clear that what appears below is an exclusion. It would put the average insured on notice that he is confronting a limitation on coverage to which he should pay special attention. Read in its entirety, the language of Exclusion A clearly sets the bounds of this limitation. A summary heading does not change the plain meaning of the exclusion as a whole or render it ambiguous. See Resource I, 407 F.3d at 636 (stating that in interpreting an insurance policy, a court should not "strain to find ambiguities") ( citations omitted). This is especially true where, as here, there is no actual contradiction between the heading and the text of the exclusion. As such, the heading of Exclusion A does not create an ambiguity that nullifies the substance of the provision.

B. <u>Ambiguity as to the Meaning of "Invasion of Privacy"</u>

Resource also argues that the term "invasion of privacy," as used in Exclusion A, covers only secrecy privacy, rather than

10

seclusion.  Since TCPA claims involve seclusional privacy, <u>Resource I</u>, 407 F.3d at 640, Resource reasons that the D&O Policy does not exclude them.  Resource reaches this interpretation of the term "invasion of privacy" by construing it in light of the other excluded injuries, such as "defamation, false light, libel and slander."  Resource argues that because these terms relate to secrecy, the term "right to privacy" specified in Exclusion A must also be construed as secrecy based.

Resource misconstrues Exclusion A.  First, the plain meaning of "invasion of privacy" encompasses both the seclusional and secrecy variants of the right to privacy.  <u>Resource I</u>, 407 F.3d at 640 (quoting <u>Am. States Ins. Co. v. Capital Assocs. of Jackson County</u>, 392 F.3d 939, 941-42 (7th Cir. 2004)).  Second, interpreting "invasion of privacy" in relation to the other harms listed with it in Exclusion A does not narrow its meaning.  There is nothing secret about defamation, false light, libel, or slander.  These harms result from falsehoods, <u>see</u> Restatement (Second) of Torts § 558 (defamation), § 568 (characterizing libel and slander as species of defamation), § 652E (false light), rather than the revealing of truthful confidential information.  That they are included alongside "invasion of privacy" in no way suggests that the draftsman intended to narrow that term's plain meaning.  Moreover, other courts have held that similar terms cover TCPA claims.  <u>See</u> <u>Universal Underwriters Ins. Co. v. Lou</u>

11

Fusz Auto. Network, Inc., 300 F. Supp. 2d 888, 895 (E.D. Mo. 2004), aff'd, 401 F.3d 876 (8th Cir. 2005)(holding that a policy covering "private nuisance (except pollution), [and] invasion of rights of privacy," without any qualifying terms, encompasses TCPA claims). Thus, the TCPA claims' concern with seclusional privacy places them squarely within the bounds of Exclusion A.

Alternatively, Resource argues that Exclusion A is ambiguous because it fails to specify whether "invasion of privacy" refers to secrecy privacy or seclusional privacy. However, as noted above, the plain meaning of the term includes both types of privacy. Exclusion A is hardly ambiguous simply because it uses a term that has multiple components.[4] See Gates Hudson & Assocs., Inc. v. The Fed. Ins. Co., 141 F.3d 500, 502 (4th Cir. 1997) (concluding that the commonsense ordinary meaning of the word injury includes its various subsets, including personal injury, bodily injury, etc.). The D&O Policy simply does not cover any type of invasion of privacy.

---

[4] This proposition is self-evident. Consider, for example, a general liability insurance contract that excludes any injuries occurring at locations where alcoholic beverages are served. The term "alcoholic beverages" undoubtedly includes beer, wine, and liquor. But the failure to specify a particular type of alcoholic beverage would not render the policy ambiguous. The only reasonable reading of such a provision would be that the term, as used, includes all of its component parts. Thus, in our example, claims would be excluded from coverage if they were based on injuries that occurred at a location where beer, wine, or liquor was served.

C.   <u>The Scope of Exclusion A</u>

Finally, Resource claims that for Exclusion A to apply, the name of a cause of action alleged in the underlying lawsuit must appear verbatim in that exclusion.  For example, counts labeled "Property Damage" or "Invasion of Privacy" would be excluded from coverage, but a count labeled "Telephone Consumer Protection Act" would not, since Exclusion A does not identify the TCPA by name.

Exclusion A excludes from coverage a "Loss in connection with any Claim" for a litany of what are clearly harms or injuries (e.g., bodily injury, sickness, and emotional distress), mixed with what might be construed as either injuries or causes of action (e.g., false imprisonment, battery, and invasion of privacy).  Resource argues that this list should be interpreted as one comprised solely of causes of action.  If the Court were to adopt such a construction, Resource would be entitled to coverage since the claims asserted against it in the TCPA Class Actions are not, per se, causes of action for invasion of privacy or property damage.

The Court disagrees with Resource's argument because an insurance provision is ambiguous only if it is "susceptible to two <u>reasonable</u> interpretations."  <u>Bailey v. Blue Cross & Blue Shield of Va.</u>, 67 F.3d 53, 58 (4th Cir. 1995) (emphasis added) (quoting Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993)).  In making this determination, this Court "must

13

interpret the policy using ordinary principles of contract law." Id. at 57. These principles include the textual interpretive canon noscitur a sociis, which dictates that words or terms should be understood by reference to those that accompany them. Andrews v. Am. Health & Life Ins. Co., 372 S.E.2d 399, 401 (Va. 1988) (quoting Turner v. Commonwealth, 309 S.E.2d 337, 339 (Va. 1983)).

Applying this canon, the only reasonable reading of Exclusion A's list is that it catalogues harms or injuries. Viewing the list any other way — e.g., as a mixed list of harms, injuries, and causes of action, or a list of causes of action exclusively — does not allow the terms included therein to be grouped together coherently as a listing of like items. When given its reasonable reading, Exclusion A unambiguously addresses the TCPA claims at issue in this case, since the underlying harms or injuries alleged are species of property damage and invasion of privacy. Resource I, 639-41.[5]

In the same vein as its first argument, Resource contends that the language of Exclusion A does not exclude all claims for

---

[5] The textual interpretive canon ejusdem generis – requiring that general terms used after more specific ones be confined to the same class as the specific terms – could also apply here and would dictate the same result. Sellers v. Bles, 92 S.E.2d 486, 490 (Va. 1956) (noting that noscitur a sociis and ejusdem generis are frequently discussed together and yield similar results).

property damage or invasion of privacy, but only those specifically listed in the exclusion.  Relying on negative inference, Resource points out that Exclusion A omits the broad prefatory language found in other exclusions to the D&O Policy.  For example, "N. ERISA Bankruptcy Exclusion," reads:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim <u>arising out of or in any way involving</u> the bankruptcy of or suspension of payment by any bank . . . . (emphasis added)

<u>See</u> <u>also</u> "P. Failure to Maintain Insurance Exclusion," and "Q. Insider Loan Exclusion."  Resource contends that the absence of the phrase "arising out of or in any way involving" reflects an intent to limit Exclusion A to specific legal claims, rather than extending it to claims that arise out of or involve a particular injury.  Resource interprets the phrase "any Claim for" in Exclusion A as reflecting an orientation toward excluding certain causes of action, as opposed to excluding certain injuries caused by tortious conduct.

The Court is not persuaded by Resource's negative inference argument.  As noted above, the only reasonable reading of the list that follows the language "any Claim for" in Exclusion A is that it catalogues harms or injuries, rather than attempting to list all causes of action on which one could sue to redress those injuries.  Even if the absence of the words "arising out of or in any way involving" somehow narrows the scope of Exclusion A, it

narrows it to claims involving the harms listed in the exclusion. Because the harms alleged in the TCPA Class Actions are invasion of privacy and property damage, Resource seeks coverage of claims "for invasion of privacy" and "for property damage" that Exclusion A expressly identifies.

### III.  Conclusion

Contrary to Resource's arguments, Exclusion A is neither ambiguous nor as narrowly drawn as the Bank suggests.  Properly interpreted, Exclusion A can be clearly understood to exclude coverage for the injuries claimed in the TCPA Class Actions.  The Court therefore **GRANTS** partial summary judgment in favor of Progressive.  The principal issue remaining in the case is whether Progressive waived its right to rely on Exclusion A by failing to cite that exclusion in its January 7, 2002 and September 19, 2005 Preliminary Coverage Analysis letters.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                     /s/
                              Walter D. Kelley, Jr.
                          UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 4, 2007